IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KATHY A. WELCH,                    )
                                   )
            Plaintiff,             )
                                   )
VS.                                )     CASE NO. 00-1439-DWB
                                   )
UNUM LIFE INSURANCE                )
COMPANY OF AMERICA,                )
                                   )
            Defendant.             )
_____   )

## MEMORANDUM AND ORDER

This matter is before the court on the parties' cross-motions for summary

judgment (Docs. 60, 61) after remand from the United States Court of Appeals for

the Tenth Circuit.  *Welch v. UNUM Life Ins. Co. of America*, 382 F.3d 1078 (10th

Cir. 2004).  The Tenth Circuit has identified the sole issue before this court on

remand as "whether it was arbitrary and capricious for UNUM to apply

Amendment 23's self-reported symptoms limitation to Ms. Welch's claim for

benefits based on her condition of fibromyalgia."  382 F.3d at 1082.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought this action for declaratory judgment in state court alleging

that Defendant improperly discontinued her long-term disability benefits.

1

Defendant removed the case to this court pursuant to 28 U.S.C. §1441 on grounds that plaintiff's suit implicates the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* (Doc. 48, at 9.)  Detailed factual summaries of the case background are contained in the prior order of this Court (Doc. 27) and the appellate decision of the Tenth Circuit, and will not be repeated here.

In ruling on the parties' previous cross-motions for summary judgment, this court held that Plaintiff was entitled to receive monthly benefits until the age 65, but not less than 60 months, "so long as she continues to be disabled as defined by the provisions of the pre-1998 plan."  (Doc. 27, at 33.)  In reaching this conclusion, this court concluded that Defendant UNUM's

> retroactive application of Amendment 23 under the facts
> and circumstances presented in this case was an arbitrary
> and capricious interpretation of the plan documents, and
> UNUM's limitation of plaintiff's claim based upon that
> erroneous interpretation is likewise arbitrary and
> capricious.   Plaintiff's long-term disability benefits
> cannot be limited to 24 months under the self-reported
> symptom provision of the new 1998 plan.

*Id*.  This court also concluded that its finding "obviates the need to decide whether fibromyalgia falls within the self-reported symptom limitation of the new plan [Amendment 23]."  (Doc. 27, at n. 22.)

On appeal, the Tenth Circuit reversed, concluding that Plaintiff's benefits under the old plan were not vested and that the old plan was amended, not

2

terminated, by the enactment of the new plan – Amendment 23.  382 F.3d at 1085-

86.  On remand, the Tenth Circuit directed this Court to apply the arbitrary and

capricious standard to UNUM's benefit determination for Ms. Welch and "to

consider the evidence and arguments of the parties regarding UNUM's

determination that fibromyalgia falls into the self-reported symptoms limitation."

382 F.3d at 1087-88.

The court then held a conference with counsel and established a

supplemental briefing schedule.  (Doc. 50.)  Subsequently, at the parties' request,

the case was stayed to allow an additional administrative review of Plaintiff's

claim.  (Min. Entry 2/10/2005.)  The court understands that this additional

administrative review was accomplished pursuant to the Unum Multistate

Regulatory Settlement Agreement.  *See e.g.*, ***Torgeson v. UNUM Life Ins. Co. of***

***America,*** 466 F.Supp.2d 1096, 1120 n. 9 (N.D. Iowa 2006);  ***Stenner-Muzyka v.***

***UNUM Life Ins. Co. of America,*** No. 804CV984T17TBM, 2005 WL 1610708, at

*7 (M.D.Fla. Jul. 7, 2005).[1]  In any event, Plaintiff included as an exhibit to her

---

[1]  The Regulatory Settlement Agreement (RSA) was apparently implemented by Unum (among other insurance companies) in response to previous lawsuits. The RSA was entered into by Unum after a multi-state market conduct examination was instituted in September 2003 by the Maine Bureau of Insurance, Tennessee Department of Commerce and Insurance, and the Massachusetts Division of Insurance. The agreement states that claims will be reviewed by revised procedures, which includes obtaining complete medical records, contacting the attending physician, and conducting up to date medical evaluations and functional capacity evaluations. ***Stenner-Muzyka v. UNUM Life Ins. Co. of America***, 2005

present motion for summary judgment a letter of July 3, 2006, from Nishant

Bhatnagar, UNUM's "Claim Reassessment Consultant" to Plaintiff's counsel

which was written after the reassessment and which concluded that the original

decision by UNUM to deny Welch's claim for long term disability was

appropriate.  (Doc. 62, Ex. B.)  Because the parties agreed to stay this case pending

completion of this "reassessment" procedure and because there was no objection to

the inclusion of this letter report as part of the summary judgment briefing, the

court believes that the letter is properly a part of the administrative record in this

case.[2]

       After UNUM's reassessment procedure concluded that Ms. Welch's claim

had been properly denied, a revised briefing schedule was established (Doc. 52),

and the parties submitted cross-motions for summary judgment regarding the issue

identified on remand.  (Docs. 60, 61.)  After review of the parties' briefs, the court

is prepared to rule.

_____

WL 1610708, at *7.

       [2]   Therefore, the court is not faced with the issue of whether or not to allow a
supplementation of the record which is not allowed in cases decided under the abuse of
discretion standard. *Hall v. UNUM Life Ins. Co. of America,* 300 F.3d 1197, 1201 (10th Cir.
2002); *Roach v. Prudential Ins. Brokerage, Inc.*, 62 Fed. Appx. 294 at *3 (10th Cir. 2003)
(in reviewing for abuse of discretion, the court is limited to the administrate record).  *Cf.*
*Jewell v. Life Ins. Co. of North America,* __ F.3d __, 2007 WL 4218919 (10th Cir. Nov. 30,
2007) (addressing supplementation of the record in cases involving *de novo* review).

# DISCUSSION

## I.    Standard of Review.

This court discussed the standards for ruling on a motion for summary judgment in its prior ruling.  (*See* Doc. 27 at 10-14.)  That discussion is incorporated herein by reference.  On appeal, the Tenth Circuit agreed that the present ERISA plan gives UNUM discretionary authority to determine eligibility for benefits and to construe the terms of the plan,[3] and that UNUM, as the plan administrator and insurer, operates under an "inherent" conflict of interest.  382 F.3d at 1087.  Therefore, on remand this court is to apply the arbitrary and capricious standard in evaluating UNUM's benefits determination, but must decrease the level of deference given to UNUM's decision (under the "sliding scale" approach) in proportion to the seriousness of the conflict.  *Id. (*citing *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996)).

In *Fought v. UNUM Life Ins. Co. of America*, 379 F.3d 997 (10th Cir. 2004), a decision handed down less than a month prior to its decision in the present

---

[3] The new plan (as set out in Amendment 23) provides that "[w]hen making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."  (Doc. 62, Ex. A at 12) (Exhibit A is identified in the CM/ECF system as Doc. 62-3, and all citations to pages of the exhibit will be to the page numbers assigned by CM/ECF to this document).

case, the Tenth Circuit discussed in detail how the "sliding scale" approach is to be applied in ERISA cases decided under the arbitrary and capricious standard of review.  *Id.* at 1005-1007.

On the <u>lower end</u> of the sliding scale – the lesser type of conflict – the Tenth Circuit identified what it called the "standard conflict of interest" where a fiduciary plays more than one role pursuant to ERISA.  In cases involving "standard conflicts of interest" the court required a plaintiff to prove the existence of the conflict, *i.e.*, that the plan administrator's dual role jeopardized his impartiality.  *Id.* at 1005.  The "standard conflicts of interest" most commonly involve situations where insurance is not involved and where the company itself is funding the plan and where its employees may be acting as either the plan administrator or the review committee responsible for reviewing and approving applications for benefits.  In such cases, the Tenth Circuit identified several factors to be considered in deciding whether the administrator is acting impartially: (1) whether the plan is self-funded, (2) whether the company funding the plan appointed and compensated the plan administrator, (3) whether the plan administrator's compensation was linked to the denial of benefits, and (4) whether the providing of benefits had a significant economic impact on the company administering the plan. *Id.*  In those cases, if plaintiff cannot establish a serious conflict of interest, the

6

court will consider a defendant's standard conflict of interest as "one factor" in deciding whether a defendant's actions in denying benefits was arbitrary and capricious.

On the upper end of the sliding scale – the most serious conflict – is the situation in which an "inherent conflict" exists, such as the present case where the plan administrator is acting as both insurer and administrator of the plan.  Under these circumstances, UNUM's decision as plan administrator, whether to pay plaintiff's benefits, affects UNUM financially as the insurer who is obligated to make the payments under the long-term disability policy.  *See **Buchanan v. Reliance Standard Life Ins. Co.,*** 5 F.Supp.2d 1172, 1180 (D. Kan.1998); ***McGraw v. Prudential Ins. Co. of America***, 137 F.3d 1253, 1258-59 (10th Cir. 1998);  ***Pitman v. Blue Cross and Blue Shield of Okla.,*** 217 F.3d 1291 (10th Cir. 2000).

Where there is an "inherent conflict" of interest, as in the present case, the reviewing court is to apply the least deferential review by requiring the plan administrator to "bear[s] the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard."

> In such instances, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence.  The

> district court must take a hard look at the evidence and
> arguments presented to the plan administrator to ensure
> that the decision was a reasoned application of the terms
> of the plan to the particular case, untainted by the conflict
> of interest.

*Fought*, 379 F.3d, at 1006.  *See also* ***Panther v. Sun Life Assur. Co. of Canada,***

464 F. Supp.2d 1116, 1120-21 (D. Kan. 2006).  "Substantial evidence" requires

more than a scintilla but less than a preponderance.  ***Sandoval v. Aetna Life & Cas.***

***Ins. Co.,*** 967 F.2d 377, 382 (10th Cir. 1992);  ***Reeves v. Unum Life Ins. Co. of***

***America***, 376 F. Supp. 2d 1285, 1292 (W.D. Okla. 2005) (citing ***Sandoval***, 967

F.2d at 382);  ***Caldwell v. Life Ins. Co. of North America***, 287 F.3d 1276, 1282

(10th Cir. 2002) (noting that substantiality of the evidence is based on the record as

a whole).

## II.    Applicable Provisions of the Plan (Amendment 23).

Amendment 23 limits disability payments to a period of 24 months for

"[d]isabilities, due to sickness or injury, which are primarily based on **self-**

**reported symptoms** . . . ."  (Doc. 62, Ex. A at 26.)  (bold in original).  The plan

also contains the following definition:

> **SELF-REPORTED SYMPTOMS** means the
> manifestations of your condition which you tell your
> doctor, that are not verifiable using tests, procedures or

> clinical examinations standardly accepted in the practice
> of medicine.  Examples of self-reported symptoms
> include, but are not limited to headaches, pain, fatigue,
> stiffness, soreness, ringing in ears, dizziness, numbness
> and loss of energy.

*Id.* at 27.  Therefore, the Tenth Circuit concluded that "the question remains as to whether UNUM appropriately applied Amendment 23's self-reported symptoms limitation to Ms. Welch's claim for disability benefits based on a diagnosis of fibromyalgia."  382 F.3d at 1086.

## III.    Interpretation of the Self-Reported Provision.

As previously noted, UNUM must demonstrate that its interpretation of the plan is reasonable.  *Fought*, 379 F.3d, at 1006.  *See also*, *McGraw v. Prudential Ins. Co. of America,* 137 F.3d 1253, 1259 (10th Cir. 1998).  In construing disputed language in benefits plans, the court is not to defer to either party's interpretation.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989).[4]  After reviewing the positions taken by UNUM in this case as to interpretation of the self-report clause, the court finds that the clause is capable of two interpretations, and is therefore ambiguous.  On the one hand, the

---

[4]  The Tenth Circuit has not taken a position on whether or not application of the *contra proferentem* rule (construing an ambiguous provision against the drafter) is proper as to ERISA plans.  *See McGee v. Equicor-Equitable HCA Corp.,* 953 F.2d 1192, 1199 (10th Cir. 1992) (noting that the circuits are split on this issue).

clause could be read to apply to the specific sickness or injury involved – in this case fibromyalgia.  Under that reading, if the specific disease can only be *diagnosed* through self-reported symptoms and the diagnosis is not "verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine," then the self-report clause would apply.  A second reading of the clause would not focus on the diagnosis of the disease itself, but on the disability resulting from the disease.  Under that reading, even if the disease could be diagnosed and verified through standardly accepted tests, procedures or examinations, the self-report clause would limit the benefits where the extent of the disability is based primarily on self-reported symptoms such as pain.

The court notes that UNUM itself has argued both of these interpretations in this case and in other cases involving the same self-report clause.[5]  In its initial

---

[5]  *See Chronister v. Baptist Health & UNUM Life Ins. Co.*, 442 F.3d 648, 656 (8th Cir. 2006).   In that case, UNUM did not dispute claimant's medical diagnosis of fibromyalgia, but did dispute whether the fibromyalgia was disabling.  The court noted that "Unum argues simply because a test allows physicians to accurately diagnose fibromyalgia does not mean that the level of limitation is objectively verified by test or clinical examinations standardly accepted in medicine." *Id.*   Also, in *Robinson v. UNUM Life Ins. Co. of America,* No. Civ.A 02-1346, 2003 WL 1193017, at *7 (D.N.H., Mar. 12, 2003), the court noted that UNUM did not dispute the etiology of the employee's disease (sarcoidosis), rather it questioned whether the manifestations of the condition rendered the employee disabled, *i.e.*, unable to perform the duties of any gainful employment.  However, in *Russell v. UNUM Life Ins. Co. of America,* 40 F.Supp.2d 747, 751 (D.S.C. 1999), the court noted that "[t]he essence of UNUM's argument is that fibromyalgia is not an objectively diagnosable disease."

brief in this case, UNUM states that "Fibromyalgia cannot be diagnosed by any objective test."  (Doc. 60 at 4.)  *See also* Doc. 60 at 7 ("Fibromyalgia can only be diagnosed through self-reported symptoms."); Doc. 60 at 9 ("Plaintiff has offered no objective test results to support her diagnosis.").  It then argues that "[i]n the present case, Plaintiff's fibromyalgia-related disability is based on self-reported symptoms, as is her fibromyalgia itself."  (Doc. 60 at 7.)  *See also* Doc. 60 at 8 ("The disability caused by fibromyalgia, like fibromyalgia itself, can only be established through the patient's reported symptoms.") In its later reply, UNUM again states that the "diagnosis [of fibromyalgia] is based on self-reported symptoms.  *See* Doc. 66 at 1.   However, it then states that "[w]hen a claimant's *disability* is based on self-reported symptoms, the Plan limits benefits to a maximum of 24 months," and that "[t]he core issue to be decided is whether Plaintiff's alleged *disability* falls within the Plan's limitation for self-reported symptoms."  *Id*. at 1-2.  (emphasis added).  *See also*, Doc. 66 at 3 ("even if Plaintiff's diagnosis was established through objective evidence, Plaintiff's disability – her alleged inability to work – was not established the same way.")

Under ordinary principles of contract interpretation,  the court must first examine the natural and plain meaning of the plan's language.  ***Risher v. UNUM Life Ins. Co.,*** No. Civ.A. CV204-130, 2005 WL 1983769 (S.D.Ga., Aug. 16,

2005):  ***Newman-Waters v. Blue Cross/Blue Shield of Tenn.***, No. 1:04-CV-132,

2005 WL 1263026, at *13 (E.D.Tenn., May 27, 2005).  The objective in construing

the plan is to ascertain and carry out the true intention of the parties, giving the

language its common and ordinary meaning as a reasonable person in the position

of the participant would have understood the words to mean.  ***McGee v. Equicor-***

***Equitable HCA Corp.***, 953 F.2d 1192, 1202 (10th Cir. 1992).  Because UNUM

itself has effectively acknowledged that the self-report clause is capable of two

interpretations, one regarding diagnosis of the disease itself, and the other the

extent of disability caused by the disease, the court finds that the clause is

ambiguous.

     The court finds from the phrasing and use of commas that the common and

ordinary meaning of the self-reporting provision is that the clause is to be applied

not to the diagnosis of the underlying disease itself, but rather to the disability

caused by the disease.  Therefore, if UNUM based its denial of Welch's claim on

the question of whether Ms. Welch's fibromyalgia itself was *diagnosed* primarily

on self-reported symptoms, or whether that *diagnosis* can be verified using tests,

procedures or clinical examinations standardly accepted in the practice of

medicine, it would have acted arbitrarily and capriciously,  particularly considering

the existence of its inherent conflict of interest.[6]

From the most recent "reassessment" letter issued by UNUM dated July 3,

2006, however, it appears that UNUM conceded that Ms. Welch was suffering

---

[6] While the court's interpretation of the policy language obviates any need to decide whether a *diagnosis* of fibromyalgia can be verified using tests, procedures or clinical examinations standardly accepted in the practice of medicine, several courts have concluded that there are standard accepted tests that verify or confirm a diagnosis of fibromyalgia. *See e.g., **Chronister v. Baptist Health & UNUM Life Ins. Co.,*** 442 F.3d 648, 656 (8th Cir. 2006) ("The eighteen point 'trigger test' performed by Dr. Lipsmeyer qualifies as a 'clinical examination standardly accepted in the practice of medicine,' and thus, Chronister's fibromyalgia is not subject to Unum's self-reported symptoms limitations."); ***Hawkins v. First Union Corp. Long-Term Disability Plan***, 326 F.3d 914, 919 (7th Cir. 2003) (noting that fibromyalgia "itself can be diagnosed more or less objectively by the 18 point test . . . , but the amount of pain and fatigue that a particular case of it produces cannot be."); ***Russell v. UNUM Life Ins. Co. of America*** 40 F.Supp.2d 747, 751 (D.S.C. 1999) (holding that fibromyalgia is an objectively diagnosable condition); *McCardle v. UNUM Life Ins. Co. of America,* No. CIV.00-1447ADM/AJB, 2001 WL 1149364 (D. Minn. 2001) (citing ***Russell v. UNUM Life Ins. Co. of America***, 40 F.Supp.2d at 750-51 for proposition that "pressure points" test is an objective, standardly accepted medical procedure for diagnosing fibromyalgia in a case with self-report clause.); ***Newman-Waters v. Blue Cross/Blue Shield of Tenn.***, No. 1:04-CV-132, 2005 WL 1263026, at *13 (E.D.Tenn., May 27, 2005) (Noting that the American College of Rheumatology has established the tender point test for diagnosing fibromyalgia). Therefore, while use of the "trigger point" or "pressure point" test may be considered subjective in nature, it is a procedure or clinical examination standardly accepted in the practice of medicine for the *diagnosis* of fibromyalgia. The court finds the above cases more persuasive than the competing line of cases, several of which are social security cases, which generically refer to a diagnosis of fibromyalgia as being "subjective." *See e.g.,* ***Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,*** 370 F.3d 869, 872 (9th Cir. 2004); ***Ward v. Apfel***, 65 F.Supp.2d 1208, 1213 (D. Kan.1999) (Social Security disability case which noted that "[t]he symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity") (citing ***Sarchet v. Chater***, 78 F.3d 305, 306 (7th Cir.1996)); *see also **Anderson v. Apfel***, 100 F.Supp.2d 1278, 1286 (D. Kan. 2000). Those cases do not address the specific language of the self-reported symptoms clause which is at issue in this case. However, this Court's social security cases do acknowledge that the pain suffered by those diagnosed with fibromyalgia can be disabling. ***Ward***, 65 F. Supp. 2d at 1213; ***Anderson,*** 100 F.Supp.2d, at 1286.

from fibromyalgia, and instead based its denial on whether Ms. Welch's claimed

*disability* was based on self-reported symptoms that could not be verified by tests

or procedures.

> A review of Ms. Welch's file indicates that she stopped working as Director of Customer Service as of January 31, 1998, due to complaints of fatigue resulting from Fibromyalgia, which was originally diagnosed in 1995. In addition to her fatigue, she also had complaints of dizziness, headaches and joint pain.  As a result of her complaints, she was paid the maximum period of payment of 24 months under the self-reported provision. Ms. Welch received LTD benefits from July 30, 1998 through July 29, 2000.  Your client's claim was closed at that time as the clinical information did not support restrictions and/or limitations from any objectifiable condition that would result in her disabling self-reported symptoms.

> As cited above, the policy will not provide coverage beyond 24 months for disabilities resulting from self-reported symptoms.  *We are not disputing that your client may have Fibromyalgia.  Diagnoses, such as Fibromyalgia, do not cause disability.*  Rather, disability is caused by the symptoms resulting from the disease.  In Ms. Welch's case, her disabling symptoms were stated as fatigue, pain, headaches and dizziness.  These symptoms are 'self-reported' symptoms, as defined by the policy. Your client was paid the maximum period of payment of 24 months due to her disabling self-reported symptoms.

*See* Doc. 62, Ex. B at 3 (emphasis added).  The question then is whether UNUM

acted arbitrarily and capriciously in applying the self-reported symptoms provision

of the plan to Ms. Welch's claims of disability, again considering the fact that

14

UNUM was acting with an inherent conflict of interest.

## IV.    Application of the Self-Report Provision.

Defendant argues that any disability caused by fibromyalgia can only be diagnosed through self-reported symptoms, most notably the "tender points" test. (Doc. 60, at 7-8.)  Defendant continues that "[w]hat makes fibromyalgia disabling is the patient's specific symptomology, in essence the level of pain felt by the patient."  (*Id.* at 8.)  "Because pain cannot be measured objectively," Defendant argues, "and the effects of pain cannot be measured objectively, all of these symptoms must be classified as self-reported."  (*Id.*, citations omitted.)  Defendant directs the Court's attention to a study that found that approximately two-thirds of those who suffer from fibromyalgia are not "disabled," but rather continue to work. (*Id.*)

Plaintiff, on the other hand, argues that Defendant cannot rely on the "self-reported symptoms" provision because of its inherent conflict of interest.  (Doc. 62, at 7.)  Plaintiff also argues that "imposing a strict standard of objective evidence of proof of disabilities derived from fibromyalgia has the effect, ultimately, of depriving all fibromyalgia patients of relief."  (*Id.*)  Plaintiff contends that the evidence in this case has "demonstrated specific objective findings of disease consistent with the presence of fibromyalgia and autoimmune

disease." (*Id.*)  Plaintiff directs the Court's attention to various medical examinations of Plaintiff, and states that her "condition is confirmed by the results of a variety of objective tests performed over a period of time, showing varying degrees of connective tissue and inflammatory disease." (*Id.*, at 7-8.)  Plaintiff, however, provides little or no discussion of these "objective tests" or how they prove the extent of Plaintiff's disability.  (*Id.*, at pg. 3-5, 7-8.)  Rather, Plaintiff notes time and again that Plaintiff's health care providers have identified her "soft tissue tender points."  (*Id.*)

Plaintiff further argues that under Defendant's analysis and requirement of objective evidence of disability, "virtually any disability would be determined by 'self-reported symptoms'" and "it would be difficult to conceive of a disability that would NOT be subject to the 24-month limitation if UNUM's construction were applied." (Doc. 62, at 9, 10.)[7]

---

[7] Obviously, however, there are many conditions that can result in disabilities that can be objectively measured, such as blindness, deafness, paralysis, the loss of limbs, and brain damage, to name a few.  Plaintiff's argument really only applies to those perceived disabilities that result from allegedly subjective complaints such as pain or fatigue.  This highlights the very reason that insurers seek to insert clauses requiring objective evidence of these types of disabilities – fear of "false" claims.  No one who has suffered from a herniated disc in the back or neck or from some other similar cause, can in good faith dispute the fact that severe pain can render an individual disabled from doing many things.  However, rather than deal with the specific facts of such cases in order to decide the extent of actual disability, and to avoid any possibility of false or exaggerated claims, insurers have increasingly turned to the use of the "objective evidence" or "self-reported symptoms" clauses in ERISA plans.

A.  Enforceability of the self-report provision

In considering the parties' arguments, the court begins by noting that the United States Supreme Court has explicitly held that ERISA does not require Plaintiff's employer to provide benefits of any kind.

> . . . ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits.  Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995) (citing *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir. 1990)); *see also*, *Balestracci v. NSTAR Elec. and Gas Corp*., 449 F.3d 224, 230 (1st Cir. 2006); *Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1008 (8th Cir. 1996).  The Court is aware of no case law, and Plaintiff has cited none, holding that an employer is required, pursuant to ERISA, to provide disability benefits in an ERISA plan for a particular condition or disease.

The cases where courts have concluded that it was an abuse of discretion to require objective evidence of fibromyalgia (or other similar diseases such as chronic fatigue syndrome) have generally involved factual situations where the plan itself contained no self-report provision or similar provision specifically

17

requiring objective evidence of disability (or of the disease itself).  For example, in

*Payzant v. UNUM Life Ins. Co. of America*, 402 F.Supp.2d 1053 (D.Minn. 2005),

the court concluded that it was an abuse of discretion for UNUM to deny a claim

for lack of objective evidence where the plan contained no language requiring

objective evidence.  *Id.* at 1064. The court noted that current medicine regarded

fibromyalgia as a "subjective" disease, and that it was particularly egregious for

UNUM to require objective evidence where the claimant's subjective complaints

were not contradicted by or inconsistent with other record evidence.  *Id.*  A similar

result was reached in *Dorris v. Cummins Engine Co., Inc.*, 470 F.Supp.2d 797,

816-17 (M.D.Tenn. 2006).  In *Dorris*, the court noted that the subject plan or

policy did not have any requirement for the type of proof required to prove

disability and did not say that self-reported or "subjective" factors should be

accorded less significance than other factors.  *Id.* The court then noted

> [t]he administrator cannot exclude a claim for lack of
> objective medical evidence unless the objective medical
> evidence standard was made clear, plain and conspicuous
> enough in the policy to negate Plaintiff's objectively
> reasonable expectations of coverage . . . .

*Id*. at 817 (quoting *May v. Metropolitan Life Ins. Co.,* 2004 WL 2011460, at * 7

(N.D.Cal. Sep. 9, 2004)).  And, as the court noted in *Morgan v. UNUM Life Ins.*

*Co. of America,* No. CIV 01-1796MJDSRN, 2002 WL 31095391, at *5 (D.Minn.

Sep. 16, 2002), where a plan never mentions "objective" evidence as a prerequisite to receiving benefits under the plan, the reviewing insurance company cannot artificially add this standard to its plan if it is not expressly included therein.[8]

In the present case, however, UNUM <u>has</u> included in the plan a specific requirement as to the type of proof required to support a long-term disability claim involving self-reported symptoms.  Courts have concluded that where UNUM has included such a self-reported symptoms clause in the plan, UNUM's insistence on objective findings is not an abuse of discretion.  ***Tupper v. APCO Assoc.,*** No. C04-2092C, 2006 WL 27209, at * 4 (W.D.Wash., Jan. 5, 2006).[9]  *See also* ***Robinson v. UNUM Life Ins. Co. of America***, No. Civ. 02-6-B, 2003 WL 1193017, at *8 (D.N.H., Mar. 12, 2003) (where there was a self-reported symptom clause, it was reasonable for UNUM to require additional objective support for Robinson's claim that his sarcoidosis manifested itself in mental fatigue, which rendered him

---

[8] For a listing of cases which hold it *prima facie* unreasonable to require claimants to submit objective evidence of the etiology of the disease given that there are no recognized objective laboratory tests, *see* ***Adams v. UNUM Life Ins. Co. of America***, No. Civ.A. H-04-2179, 2005 WL 2030840, at *32 (S.D.Tex., Aug. 23, 2005).

[9] In ***Tupper,*** the court went on to find that UNUM went beyond the language of the self-reported symptom clause to require that the medical documentation provide <u>consistent</u> evidence of impairment. 2006 WL 27209, at * 6.  The court concluded that the clause did not require that there be no conflicting evidence, only that the symptoms reported find some support in the objective data. *Id.*  Because UNUM effectively imposed a new requirement for coverage, *i.e.,* consistent evidence, this constituted an abuse of discretion. *Id.*

19

disabled beyond the twenty-four month policy provision).[10]

If the court were to adopt Welch's argument that UNUM cannot rely on a specific plan provision which may require a specific type or degree of proof of disability in cases such as those involving a diagnosis of fibromyalgia, then the court would effectively be rewriting the terms of the plan.  Welch has cited no cases where the court has totally disregarded a specific plan provision which set out the nature or extent of the evidence required to establish a disability under the plan.  Nor has Plaintiff cited any cases that would preclude UNUM from including such a plan provision, even though the practical and logical effect of such a provision would be to reduce or limit the claims which are going to be approved. It was not an abuse of discretion for UNUM to include a self-report provision in the ERISA plan, nor is it an abuse of discretion for UNUM to fairly enforce the provisions of the self-reported symptoms clause in the present plan.[11]

---

[10]  In reaching its decision, the court in ***Robinson*** noted that imposing an objective evidence requirement may be an abuse of discretion in some cases where the terms of the plan do not mandate such a requirement and the etiology cannot be rooted in objective medical testing, but distinguished Robinson's situation where the plan had the self-reported symptom provision.  2003 WL 1193017, at *7.

[11]  The court does continue to be bothered in this case by the fact that Welch was originally diagnosed with fibromyalgia in 1995, became disabled when she left work on January 31, 1998, but is subject to a plan "amendment" that was not enacted until August 6, 1998, but was made effective ***retroactively*** to January 1, 1998.  However, the Tenth Circuit's opinion in this case forecloses reconsideration of those facts.

B.  Application of the self-reported symptom clause to Ms. Welch's claim

Finding that a self-report provision is enforceable, however, does not complete the court's review of UNUM's actions in this case.  The court must determine whether UNUM application of the provisions of the self-report clause to Ms. Welch's claim of disability is supported by "substantial evidence."  ***Fought***, 379 F.3d at 1006.  Stated another way, what did UNUM do in the processing of Ms. Welch's claim that led to their finding that her disability was primarily the result of self-reported symptoms.

We first start with the fact that UNUM initially approved Ms. Welch's claim of disability by letter of September 25, 1998. (Doc. 62, Ex. A at Appx 0280.)[12] This was approximately one month after Amendment 23 was adopted as part of the Coleman ERISA plan.  Nothing in that approval letter, however, indicated that Ms. Welch's claim would be limited by the 24-month period for self-reported symptoms that was newly-added by Amendment 23.  In fact, the letter indicates that the maximum period of payment is "to age 65."  Appx 0281.  The letter states that Ms. Welch had met the requirements for proving that she was disabled under

---

[12]  UNUM included the Appellant's Appendix in the prior Tenth Circuit appeal, Case No. 02-3220. as Exhibit A to its motion for summary judgment.  That document was allowed to be filed conventionally.  For ease of citation, the court will refer to that exhibit simply as "Appx 0000."

the specific provisions of the plan, *i.e.,* that she was limited from performing the material and substantial duties of her regular occupation due to her sickness or injury; and she had a 20% or more loss in her indexed monthly earnings due to the same sickness or injury. *Id.* The letter also encourages Ms. Welch to immediately start the process of applying for disability benefits under the Social Security System.[13] *Id.* The letter indicated that the company's next request for updated medical information was scheduled for December, 1998. *Id.* The clear import of this letter is that at that time UNUM believed that Ms. Welch was truly disabled, both under the provisions of the ERISA plan as well as under the Social Security disability regulations and requirements.

Other than medical records reviews by someone at UNUM (whose medical training and experience are unknown) on 1/21/1999, 4/19/1999, 11/2/1999, 2/4/2000 and 6/23/2000, Appx 0306, 0325, 0332, 0339, 0354, UNUM's investigation concerning Ms. Welch's continued disability status consisted of one on-site visit with Ms. Welch in her home by a UNUM representative, Appx 0308, a referral of Ms. Welch's medical records to Dr. Peter H. Schur, M.D., Appx 0313,

---

[13] As required, Ms. Welch provided UNUM with copies of her application for Social Security disability benefits , Appx. 0283, 0299, and her final approval for those benefits beginning in July 1998. Appx 0301, 0305. These Social Security benefits were to be deducted from the amounts Ms. Welch would receive from UNUM under the ERISA plan. Appx. 0281.

and two "Dr. to Dr." telephone calls by UNUM's Dr. Valerie A. Childrey, MD to

Ms. Welch's rheumatologist, Dr. James Anderson, and her primary care physician,

Dr. Carolina M. Soria.  See Appx 0332.  Also included in the file was an article on

fibromyalgia.  Appx 0316-0324.[14]

The home visit by UNUM was held on March 24, 1999.  The UNUM

representative noted in her report that Ms. Welch

> showed no outward signs of impairment throughout our
> 50 minute meeting.  It was noticeable on two occasions
> when she got up out of the chair that she did have to push
> up with her arms and she did it at a very slow pace, and
> then had to walk gingerly for a couple of steps.  Outside
> of this feature, I noticed no signs of impairment of Ms.
> Welch.  She answered all questions asked of her
> concerning her medical conditions, activities,
> occupational status and plans.
>
> *   *   *
>
> I would also recommend working with our medical
> department to update all current medical records from Dr.
> Anderson and from Dr. Soria.  *Once we have those
> medical records, the possibility of an outside evaluation
> could be in order, if the medical department warrants* it.

Appx 0308, 0312 (emphasis added).

Shortly thereafter, Ms. Welch's medical records were forward to Dr. Peter

---

[14]  This is the article cited by UNUM in its brief, Doc. 60 at 8, for the proposition that approximately two-thirds of those who suffer from fibromyalgia are not disabled by continue to work.  *See* Appx 0321.

H. Schur, Professor of Medicine, Brigham and Women's Hospital, Harvard

Medical School, for such an outside evaluation.  In his letter report of April 3,

1999, Dr. Schur made the following comments and recommendations:

> A.  Assess disability: This can be done in a number of different ways.  One can ask the patient regarding activities of daily living, such as dressing, cleaning house, cooking meals, shopping (for food etc), using the toilet, bathing – vs. showering).  *One can objectify this by observing her (with her knowing it – or not), or having her observed in some physical therapy departments that train people in ADL (AIDS to Daily Living).  If she cannot perform some of these ADL, then she is disabled partially; if she can't do most of them she is severely disabled.*

> Then there is work disability.  I would use the same criteria as above, asking her what she can, or cannot do, and see what she can actually do.

> *A good physical therapist can do a ADL examination!  It is fairly standard.  Based on her complaints, and how she ambles into the office, I think she will flunk.*

> *   *   *

> 1.  Restrictions/Limitations/Impairment: It is hard to say, because these questions haven't been either asked, or recorded in the notes I saw.  *Again, as noted above, I suggest an ADL assessment.*

> 2.  Diagnosis/Response to treatment: *I agree with the diagnosis of fibromyalgia.*  She has the characteristic features of lots of aches and pains, tender points, fatigue and sleep disturbance.  This has been present since the 1970's ! (when seen by Dr. Fred Wolfe, a fibromyalgia

expert).

\*   \*   \*

3.  Do I differ with Dr. Anderson: no

Appx 0313-0315 (emphasis added).

On April 23, 1999, UNUM wrote to Ms. Welch notifying her, apparently for the first time, that there was a 24-month limit on payments for disabilities which are based primarily on self-reported symptoms.  Appx. 0326.  The letter also advised that UNUM would be requesting additional information from Dr. Anderson, and that UNUM's medical department would have a telephone conversation with Dr. Anderson "to confirm your current restrictions and limitations and his expected duration of your disability."  Appx. 0301-0302.  One of the medical reviews references two telephone calls from UNUM's doctor (apparently an in-house physician) to Ms. Welch's rheumatologist, Dr. Anderson, and to her primary care physician, Dr. Soria, in June 1999, about Ms. Welch's current status.  *See* Appx. 0332.

Another letter from UNUM dated November 12, 1999, again quoted the plan language about self-reported symptoms and the limited 24-month period for payments for disabilities with primarily self-reported symptoms.  Appx. 0337.  The letter concluded

25

Per your request, UNUM's Medical Department has reviewed the information which you provided, along with the medical records previously contained in your claim file.  This review has determined that your condition is currently being diagnosed as Fibromyalgia.  *Although Dr. Anderson's restrictions and limitations of no over exertion, no heaving [sic] lifting and the need for regular rest appear reasonable, the severity of your Fibromyalgia is based solely on your self reported symptoms*.  Despite all of your diagnostic evaluations, an organic etiology for your symptoms has not been determined.

Therefore, based on the above noted review, your claim will continue to be paid under the aforementioned limitation.  Accordingly, provided that you remain disabled as defined in your contract, you [sic] disability benefits will continue through July 29, 2000.

Appx. 0337-0338 (emphasis added).

Additional medical records were provided by Ms. Welch's counsel.  Appx. 0340, 0357.  This precipitated two final letters from UNUM concerning the claim.

The first, dated June 30, 2000, noted that "[o]ur onsite physician believes Dr. Schur's letter is very clear that Mrs. Welch's symptoms are self-reported and that the impairment appears to be based on self-reported symptoms."  Appx. 0355.  The last letter, dated September 6, 2000, contains a similar conclusion

On appeal, a full review of Ms. Welch's file was conducted.  Our medical department reviewed the entire file and determined that her symptoms are self-reported.  Our analysis indicated that the severity of your client's fibromyalgia is based solely on her self-reported

> symptoms.  Even with all her diagnostic evaluations, an
> organic etiology for her symptoms has not been
> determined.

Appx. 0364.

Noticeably absent from any of these denial letters, or from the subsequent

"reassessment" letter of July 3, 2006 (Doc. 62, Ex. B), is any reference to whether

or not Ms. Welch's self-reported symptoms of pain were or could be "verifiable

using tests, procedures or clinical examinations standardly accepted in the practice

of medicine."  (*See* Amendment 23, Doc. 62, Ex. A at 27.)  If there are tests,

procedures or examinations that are standardly accepted in the medical community

to test the degree or severity of pain as to a certain condition, then even though the

pain is "self-reported" by the patient, it is not a "self-reported symptom" <u>as defined</u>

<u>by UNUM in the policy</u>.  UNUM never addressed that specific issue as to Ms.

Welch's claim.

Moreover, when it had an outside doctor examine Ms. Welch's records, that

doctor noted that UNUM could "objectify" the level of Ms. Welch's disability by

having her observed by a trained physical therapist who could conduct an ADL

examination and that such an examination "is fairly standard."  Appx. 0313.[15]  In

---

[15]  Some courts have opined that the severity of any disability resulting from
fibromyalgia cannot be measured by objective methods.  *See e.g., **Hawkins v. First Union
Corp. Long-Term Disability Plan**, 326 F.3d 914, 919 (7th Cir. 2003) (noting that

27

spite of Dr. Schur's recommendation that an ADL examination be conducted by a trained physical therapist, the record does not indicate that such an examination was requested by UNUM and there is no reference to any results of such an examination in the administrative record.

Simply stated, UNUM only considered and applied part of the definition of "self reported symptoms" while disregarding the caveat that even self-reported symptoms such as pain may fall outside of the plan definition where there are tests, procedures or <u>clinical examinations</u> standardly accepted in the practice of medicine that would verify the severity of the patient's reported pain.   It also apparently disregarded the recommendation of the outside physician it hired to review Ms.

---

fibromyalgia "itself can be diagnosed more or less objectively by the 18 point test . . . , but the amount of pain and fatigue that a particular case of it produces cannot be."); ***Ward v. Apfel***, 65 F.Supp.2d 1208, 1213 (D. Kan.1999) (discussing fibromyalgia and concluding that "[t]he symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity") (citing ***Sarchet v. Chater***, 78 F.3d 305, 306 (7th Cir.1996)); ***Anderson v. Apfel***, 100 F.Supp.2d 1278, 1286 (D. Kan. 2000).  However, such generalized conclusions from other cases cannot overcome the specific conclusions and recommendations of the outside physician hired by UNUM to conduct a review of the specific facts of this case.   Dr. Schur agreed with Welch's rheumatologist, Dr. James Anderson, that Ms. Welch had fibromyalgia.   Appx. 0314.   He stated that Welch's assessment of disability could be "objectif[ied] by an ADL examination by a trained therapist which he concluded was "fairly standard."  Appx. 0313. He also stated that if Ms. Welch were given such an ADL examination by a good physical therapist, "I think she will flunk." *Id.*   At least one other court has effectively agreed with Dr. Schur's conclusion that the physical limitations imposed by the symptoms of fibromyalgia do lend themselves to objective analysis. *See **Boardman v. Prudential Ins. Co. of America***, 337 F.3d 9, 16 n. 5 (1st Cir. 2003).

Welch's medical records.  Considering that UNUM is acting under an inherent conflict in this case, its total disregard of the definition of self-reported symptoms and total disregard of the recommendations of its outside physician for an examination of Ms. Welch by a trained physical therapist, leads to the conclusion that UNUM did not have substantial evidence to support its denial of Ms. Welch's claim in this case.[16]  UNUM's approach did not result in a reasoned application of the terms of the plan to this case, untainted by the conflict of interest.  *See e.g.*, ***Fought***, 379 F.3d at 1006.  Therefore, UNUM's denial of Ms. Welch's claim for long term disability benefits beyond the 24-month period already paid by UNUM in this case was arbitrary and capricious.

Plaintiff is therefore entitled to judgment for the amount of unpaid long term disability benefits due under the ERISA plan from the time UNUM ceased such payments on July 29, 2000, through the date of this Memorandum and Opinion.  In addition, Plaintiff is entitled to receive future monthly benefits until the age 65,[17]

---

[16]  This is further highlighted by the fact that UNUM had previously concluded that Ms. Welch was disabled based on her inability to perform the material and substantial duties of her occupation, Appnx 0281, that the restrictions and limitations prescribed by Ms. Welch's rheumatologist, "appear reasonable," Appnx 0337, and that the independent physician hired by UNUM thought Ms. Welch would "flunk" an ADL examination administered by a good physical therapist.  Appnx 0313.

[17]  From the record, it appears that Ms. Welch will turn 65 in 2010.  *See* Doc. 62, Ex. B at 1.

so long as she continues to be "disabled" as defined by the provisions of Amendment 23.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 61) is GRANTED; and Defendant's motion for summary judgment (Doc. 60) is DENIED.

**IT IS FURTHER ORDERED** that the parties meet and confer in an attempt to reach a consensus as to the dollar amount of past benefits to which Plaintiff is entitled pursuant to the terms of this Memorandum and Order and calculated as set forth in Amendment 23, considering such matters as the offset of Social Security benefits, etc.  If the parties cannot reach an agreement as to the dollar amount of such benefits, each side shall submit a written calculation of their version of such benefits along with a short memorandum, not to exceed five pages in length, explaining how they arrived at their calculation.  These written submissions shall be filed on or before **January 14, 2008.**  The Court will thereafter formally enter a judgment pursuant to Fed. R. Civ. P. 58 for the amount of past benefits due to Plaintiff.


Dated at Wichita, Kansas, on this 13th day of December, 2007.

_s/_   DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge