# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KATHY A. WELCH, )
                        Plaintiff, )
)
VS. ) CASE NO. 00-1439-DWB
)
UNUM LIFE INSURANCE )
COMPANY OF AMERICA, )
)
                        Defendant. )
_____ )

## **MEMORANDUM AND ORDER**

This matter is before the court on the following motions:

1. Plaintiff's Motion for Determination of Prejudgment Interest (Doc. 73) and supporting memorandum (Doc. 74); and

2. Plaintiff's Motion for Assessment of Attorney's Fees (Doc. 75), together with Plaintiff's supporting memorandum and supplemental memorandum (Doc's 76, 77), and Defendant's memorandum opposing assessment of attorney's fees. (Doc. 78.)

The court has reviewed the briefs of the parties and is prepared to rule.

## **PROCEDURAL BACKGROUND**

The lengthy procedural background of this case is set out in the

Memorandum and Order of December 13, 2007, and will not be repeated here. Doc. 67 at 1-4.  In the December 13 order, the court granted Plaintiff's motion for summary judgment, holding that Plaintiff is entitled to judgment for the amount of unpaid long term disability benefits due under the ERISA plan from the time UNUM ceased such payments on July 29, 2000, through the date of the order, and is also entitled to receive future monthly benefits until the age 65, so long as she continues to be "disabled" as defined by the provisions of Amendment 23 (the policy).  Doc. 67 at 29-30.  The parties were directed to meet and confer concerning the actual dollar amount of the benefits awarded by the order.

Subsequently, the parties filed a Stipulation Regarding Accrued Benefits agreeing that the benefits from July 29, 2000 through January 30, 2008, a total of 90 months, totaled $199,369.80.  Doc. 72.  Plaintiff then filed the two motions now pending before the court seeking an award of prejudgment interest and attorney's fees.

## DISCUSSION

### I. Prejudgment Interest.

Plaintiff seeks an award of prejudgment interest that accrued on each of the 90 monthly payments due under the court's prior order, calculated from the time each payment became due and payable, at the rate of 10% per annum pursuant to

2

K.S.A. 16-201.  Doc. 74, Attachment.  As of February 15, 2008, Plaintiff has calculated the amount of prejudgment interest as $74, 933.31.  Doc's 73, 74. Defendant did not file a response to the motion, and in its memorandum on attorney's fees states that "UNUM did not oppose the request for an award of interest" and "does not quibble with the 10% rate (as it is the correct one under applicable case law) . . . ."  Doc. 78 at 5-6.

This court has previously addressed the issue of award of prejudgment interest in federal cases:

> Whether to award prejudgment interest, and at what rate, are matters left to the discretion of the court. *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1030-31 (4th Cir.1993). Although the rate of prejudgment interest allowed on a federal claim is a matter of federal law, the courts generally look to state law to determine the rate of prejudgment interest. *See id.* at 1031. *But see, Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986) (strong policy in 9th Circuit for application of 28 U.S.C. § 1961-postjudgment interest rate-to awards of prejudgment interest). The prejudgment interest rate in Kansas is ten percent annually as provided at K.S.A. § 16-201. *Farmers State Bank v. Production Credit Ass'n of St. Cloud,* 243 Kan. 87, 103, 755 P.2d 518 (1988). The court, in its discretion, concludes that this is an equitable rate of interest under the circumstances of this case.

***Van Hoove v. Mid-America Bldg. Maintenance, Inc.,*** 841 F.Supp. 1523, 1536-1537 (D.Kan.1993).  *See also* **Barvick v. Cisneros,** 953 F.Supp. 341, 343(D.Kan. 1997) (using K.S.A. 16-201 to award interest on an award of back pay under

federal law); ***Baty v. Willamette Industries, Inc.,*** 985 F.Supp. 987, 999 (D.Kan.,1997) (applying the Kansas statute, but reducing the total amount of interest because the back pay accrued over time); ***Kansas v. Titus***, 452 F.Supp.2d 1136, 1152 (D.Kan. 2006) (awarding 10% prejudgment interest under the Kansas statute in an ERISA case). Accordingly, the court will grant Plaintiff's motion for an award of interest at the 10% statutory prejudgment interest rate set in K.S.A. 16-201.[1]

Defendant also has not objected to the method of calculation of interest used by Plaintiff. See Doc. 74, Attachment. Since Plaintiff has carefully calculated interest on each monthly payment beginning with the date on which that monthly payment became due, the court adopts Plaintiff's interest calculations for prejudgment interest due through February 15, 2008.

Additional prejudgment interest has accrued since Plaintiff submitted her calculations as of February 15, 2008. The additional interest has accrued not only

---

[1] In ***Kansas v. Titus***, Judge Robinson noted that a district court must first determine whether an award of prejudgment interest will serve to compensate the injured party, and second, even if the award is compensatory in nature, the court must still determine whether the equities would preclude the award of prejudgment interest. 452 F.Supp.2d at 1152. While Defendant's failure to object to an award of prejudgment interest in this case might relieve the court of making these findings, the court concludes that in the present case an award of prejudgment interest will serve to compensate Plaintiff for the significant delay in obtaining the monthly benefits to which she is entitled, and further concludes that the equities in no way preclude an award of prejudgment interest under the facts of this case.

on benefit payments that had become payable at the time the parties entered their Stipulation Regarding Accrued Benefits, Doc. 72, but also on benefits that became payable after January 30, 2008 (the date used in the parties' stipulation). The court has calculated the additional benefits and additional prejudgment interest in the same manner as presented by Plaintiff, and a copy of the court's calculations are set out in an attachment to this Memorandum and Order.

As shown on the court's attachment, in addition to the stipulated amount of past due benefits of $199,369.80 as of January 30, 2008, six months of additional benefits have accrued in the amount of $13,291.32. This results in total past due benefits of $212,661.12. As also shown on the court's attachment, in addition to the $74,933.31 of prejudgment interest calculated by Plaintiff, prejudgment interest has accrued after February 15, 2008 resulting in a total amount of prejudgment interest as of August 18, 2008 of $85,384.21. The court will therefore direct the entry of judgment in favor of Plaintiff in a total amount of $298,045.33, representing all past due benefits which have become payable as of August 18, 2008, together with all prejudgment interest on those past due benefits at the statutory rate of 10% per annum as of August 18, 2008.

## II.   Attorney's Fees.

Plaintiff also seeks an award of attorney's fees and costs in the sum of

$20,718.92, pursuant to 29 U.S.C. § 1132. (Doc. 77.)[2] UNUM has agreed not to contest the reasonableness of the amount of fees sought,[3] but does object to the propriety of an award of attorney's fees under the statute. Doc. 77 at 1; Doc. 78.

Both parties acknowledge that the standard for an award of attorney's fees in an ERISA case was set out in ***Gordon v. U.S. Steel Corp.***, 724 F.2d 106 (10th 1983):

> 29 U.S.C. § 1132(g)(1) provides in pertinent part:
> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
>
> Clearly, it is within the district court's sound discretion to determine whether a party is entitled to attorney's fees as the result of an action brought under ERISA. Further, the granting of attorney's fees under ERISA is not to be done as a "matter of course," but is discretionary in nature.

724 F.2d at 108 (citations omitted). The ***Gordon*** court then set out five non-exclusive factors that a court should consider in deciding whether to award attorney's fees in an ERISA case:

---

[2] This includes an amount for supplemental briefing on the motion for attorney's fees.

[3] Plaintiff's motion states that its request for fees is based on an hourly fee of $170, which was counsel's current rate as of the beginning of this case in 2000. Doc. 76 at 2. While the court does not need to scrutinize the hours expended as carefully as it would if Defendant were contesting the reasonableness of the fee amount, the court is satisfied that the hours spent and services outlined in Plaintiff's billing statements are extremely fair and reasonable, as is the requested hourly rate.

> Thus, we hold that when determining whether to award attorney's fees under section 1132(g)(1), the district court should consider these factors among others: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

724 F.2d at 109.  *See also* **McGee v. Equicor-Equitable HCA Corp.,** 953 F.2d 1192, 1209-10 (10th Cir. 1992); **Graham v. Hartford Life and Accident Ins. Co.,** 501 F.3d 1153, 1162 (10th Cir. 2007).

Even though the award of attorney's fees in an ERISA case is discretionary and is not conditioned upon prevailing party status, the Tenth Circuit has acknowledged that it also affords "certain weight" to prevailing party status.

> We also afford certain weight to prevailing party status, even though we acknowledge that the ERISA attorney's fees provision is not expressly directed at prevailing parties. *See, e.g., Deboard v. Sunshine Mining & Ref. Co.,* 208 F.3d 1228, 1245 (10th Cir.2000) (reversing and remanding an attorney's fee award because appellate decision "alter[ed] the relative merits of the parties' positions"); *Morgan v. Indep. Drivers Ass'n Pension Plan,* 975 F.2d 1467, 1471 (10th Cir.1992) ( "Although the statute does not expressly require that a party prevail as a condition to receiving an award of attorneys' fees ... we have remanded cases for denial of fees without explanation only when the party seeking fees had

> prevailed at least partially." (citations omitted)); *Arfsten v. Frontier Airlines, Inc. Ret. Plan for Pilots,* 967 F.2d 438, 442 n. 3 (10th Cir.1992) ( "Because we reverse the district court's decision on the merits, plaintiff is not a prevailing party, and his arguments on attorney's fees are moot.").

***Graham v. Hartford Life and Accident Ins. Co.*** 501 F.3d at 1162. *See also* ***Phelps v. U.S. West, Inc.,*** 141 F.3d 1185 (Table), 1998 WL 165117 (10th Cir. 1998) (". . .most courts, including this one, have interpreted ERISA to allow an award of attorney's fees only to prevailing parties." (Citations omitted)).[4]  In this case, while Defendant prevailed in its earlier Tenth Circuit appeal by obtaining a ruling that Plaintiff's benefits under the old plan were not vested and that the old plan was amended, not terminated, by enactment of Amendment 23, ***Welch v. UNUM Life Ins. Co. of America***, 382 F.3d 1078 (10th Cir. 2004), the court concludes that Plaintiff was ultimately a prevailing party as a result of this court's Memorandum and Order of December 27, 2007, which granted Plaintiff's claim to benefits under the amended plan.  Therefore, regardless of the weight to be given to prevailing party status in deciding the issue of attorney's fees, Plaintiff is to be considered as the prevailing party in this case.  The court will therefore consider

---

[4] The cases cited by Defendant to support the statement that there is no presumption in favor of granting attorney's fees to a prevailing plaintiff, Doc. 78 at 2, n. 1, are all from other circuits.

the other factors outlined in ***Gordon.***

The court agrees with Defendant that factor 1 (degree of the opposing parties' culpability or bad faith) and factor 5 (relative merits of the parties' positions), are related, and will therefore be discussed together.  *See* ***Winkel v. Kennecott Holdings Corp.***, 3 Fed.Appx. 697, 709 (10th Cir. 2001).  Clearly, Defendant's position concerning the applicable version of the plan that applied to Plaintiff's claim was justified.  The Tenth Circuit agreed with Defendant's position that Plaintiff did not have vested benefits under the old plan, and that the old plan had not been terminated by the new plan (Amendment 23).  382 F.3d at 1083-86.

As to Defendant's position that Plaintiff's claim of fibromyalgia was limited by the self-reported symptoms limitation under Amendment 23, the court cannot conclude that this position, while not accepted by the court, was without any merit.  In remanding for decision on this issue, the Tenth Circuit noted the conundrum facing insurers in evaluating disability claims concerning fibromyalgia.  382 F.3d at 1087.  While this court ultimately rejected Defendant's arguments after remand, it cannot conclude on the evidence presented that there was no merit in Defendant's position concerning interpretation of the objective evidence requirement of Amendment 23 or the application of that provision to the facts of this case.

As outlined in its December 13, 2007 Memorandum and Order, however, the court was concerned about Defendant's handling of this claim. Doc. 67 at 22-29. Particularly bothersome was Defendant's failure to follow the written recommendation of Dr. Schur, an outside specialist retained by Defendant to review Plaintiff's file, that Plaintiff undergo an ADL examination by trained physical therapist in order to "objectify" the extent of her claimed disability. Doc. 67 at 24-25, 27-28. Defendant's failure to follow the recommendations of its own retained specialist raises obvious questions about the adequacy of Defendant's claim-review process.

Other instances of problems with the claims review process of this same Defendant were outlined in a 2007 law review article, John H. Langbein, "Trust Law as Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Benefit Denials under ERISA," 101 Nw. U. L. Rev. 1315 (2007), and have been discussed by other courts. *Id.* at 1320, notes 25-30. Likewise, this Defendant's claims review process has been the subject of investigation by various state insurance commissions. *Id.* at 1320, notes 32-35.[5] The processing of Plaintiff's claim in this case, when considered in light of these circumstances and the inherent

---

[5] In fact, this case was stayed for a period so that additional administrative review of Plaintiff's claim could be conducted, presumably pursuant to the UNUM Multistate Regulatory Settlement Agreement. Doc. 67 at 3, n. 1.

conflict under which Defendant operated in processing claims under this plan,[6] raise questions about Defendant's good faith. However, lacking some direct evidence, the court cannot find that Defendant acted in bad faith in denying Plaintiff's claim. Therefore, factors 1 and 5 do not weigh in favor of an award of attorney's fees.

In considering factor 2 (ability of the opposing parties to personally satisfy an award of attorney's fees), it is clear that Defendant has the financial ability to satisfy an award of attorney's fees. That being said, however, this factor really does not add much to an overall consideration of an award of attorney's fees.

As to factor 3 (whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances), it is possible that an award of attorney's fees in this case could, at least to some extent, deter Defendant from exercising lax or questionable claims processing of other ERISA claims in the future. However, given the fact that this Defendant has been subject to significant administrative review of its claims processing, and has been required

---

[6] *See* Doc. 67 at 7-8, *citing* **Fought v. UNUM Life Ins. Co. of America**, 379 F.3d 997, 1006 (10th Cir. 2004). Since the December 13, 2007 Memorandum and Order in this case, the Supreme Court has also addressed how a reviewing court should consider a conflict of interest arising from the dual role of an entity as an ERISA plan administrator and payer of plan benefits. **Metropolitan Life Ins. Co. v. Glenn**, __ U.S. __, 128 S.Ct. 2243 (2008).

11

to pay substantial fines,[7] it is doubtful that the small amount of attorney's fees claimed by Plaintiff in this case would have much of a deterrent effect on Defendant's future conduct.  This factor does not weigh in favor of an award of attorney's fees.

Finally, as to factor 5 (whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA), the court does not find that Plaintiff in this case sought to benefit all participants and/or beneficiaries in the subject plan.  It can be surmised, however, that Plaintiff did seek to resolve a significant legal question regarding ERISA in that Plaintiff argued that if her claim was limited by the objective requirement provision of the plan, "virtually any disability would be determined by 'self-reported symptoms'" and "it would be difficult to conceive of a disability that would NOT be subject to the 24-month limitation if UNUM's construction were applied."  Doc. 62 at 9, 10.  To the extent that Plaintiff could negate the self-report provision of the plan, this would, of course, benefit any other plan participant who might have a similar claim in the future.  However, as a legal matter, Plaintiff did not prevail in her argument about plan interpretation.  Doc. 67

---

[7] John H. Langbein, "Trust Law as Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Benefit Denials under ERISA," 101 Nw. U. L. Rev. 1315, 1320, n. 33 (2007).

at 17-20 (holding that it was not an abuse of discretion for Defendant to include a self-report provision in the plan or to fairly enforce such a provision).  Thus, the court cannot conclude that this case resolves a significant <u>legal</u> issue concerning ERISA.  Instead, the court applied established legal principles in deciding whether Defendant's decision to deny benefits under the self-report provision was supported by substantial evidence.  As such, this factor also does not weigh in favor of an award of attorney's fees.

       Two other matters should be mentioned in considering the award of attorney's fees in this case.  First, Defendant suggests that a prior order of this court denying attorney's fees should somehow have significant weight at this later stage of the proceedings.  Doc. 78 at 1.  However, the court's prior Memorandum and Order of May 21, 2002 (Doc. 37), which denied an award of attorney's fees to Plaintiff, was issued without full consideration of the way Defendant actually processed Plaintiff's claim.  At that early stage of the case, the court had ruled only on the legal issue of whether the old plan applied rather than the new Amendment 23, and had concluded that it did not need to reach a consideration of whether Defendant's benefits determination under Amendment 23 was arbitrary and capricious.  382 F.3d at 1087.  Therefore, the prior opinion on this issue is not of significant weight due to the substantial difference in circumstances.

Second, the court has considered Defendant's argument that Plaintiff has received a higher award of prejudgment interest using the 10% statutory rate than she would have received based upon applicable market rates, and thus has been fully compensated for her loss. Doc. 78 at 5-6. Defendant relies on ***Winkel v. Kennecott Holdings Corp.***, 3 Fed.Appx. 697, 709 (10th Cir. 2001), where the district court had considered, as part of its analysis of attorney's fees, the fact that it had awarded a substantial penalty to plaintiff. The court agrees that this is a proper consideration in deciding whether to award attorney's fees.

In connection with awards of prejudgment interest, courts in this district have noted that the statutory rate may not accurately reflect economic reality, and have refused, in some cases, to allow the 10% statutory rate in favor of other market-sensitive rates such as the IRS rate for income tax underpayments and overpayments. *See e.g.*, ***Wirtz v. Kansas Farm Bureau Services, Inc***. 274 F.Supp.2d 1215, 1223 (D.Kan. 2003) (noting that economic conditions for the past three years indicated that the statutory rate did not accurately reflect economic reality). The court in ***Wirtz*** emphasized that it must ensure that the plaintiff is made whole without awarding him a windfall. *Id.*

At the present time, it is undisputable that a 10% interest rate far exceeds normal market-sensitive interest rates. This is evident by comparing the Kansas

10% prejudgment interest rate with the federal post-judgment rate. Under federal law, effective December 21, 2000, interest on a money judgment recovered in a civil case in a district court is calculated

> at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a). For the relevant period from December 2000[8] through August 2008, this federal rate has varied from a high of 5.60% (December 2000) to a low of 1.01% (June 2003).[9] Averaging the annual rates for this relevant period results in an interest rate of approximately 3.5%. Thus, an award of prejudgment interest at a statutory 10% rate significantly exceeds the interest rate Plaintiff would have received had she been paid the benefits as they became due and invested those benefits at prevailing rates. The court therefore finds that the prejudgment interest award in this case fully compensates Plaintiff not only for her economic loss of interest, but also for other costs such as attorney's fees.

---

[8] Prior to December 21, 2000, the rate was the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. For the period July 2000 through December 2000, that rate varied from a low of 6.052% to a high of 6.375%. *See* 28 U.S.C. § 1961, 52-Week T-Bill Rate Table of Changes.

[9] *See* http://www.federalreserve.gov/releases/h15/current.

Considering all of the above factors, the court determines that Plaintiff should not receive an award of attorney's fees in this case pursuant to 29 U.S.C. § 1132.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Assessment of Attorney's Fees pursuant to 29 U.S.C. § 1132 (Doc. 75) is DENIED.

**IT IS FURTHER ORDERED** that judgment should be entered this date in favor of Plaintiff for past due benefits under Amendment 23 in the amount of $212,661.12, representing benefits which became due and payable between July 29, 2000 and through August 18, 2008;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Determination of Prejudgment Interest (Doc. 73) is GRANTED, and Plaintiff is hereby awarded prejudgment interest at the rate of 10% per annum pursuant to K.S.A. 16-201 in the total amount of $85,384.21, representing interest on benefits which have previously become due and payable and calculated as of August 18, 2008; and

**IT IS FURTHER ORDERED** that the final judgment in this case in the amount of $298,045.33 (representing both past due benefits and prejudgment interest) shall draw post-judgment interest calculated at the rate provided by 28

U.S.C. § 1961(a) from the date of judgment, August 18, 2008, through the date of payment.

Dated at Wichita, Kansas, on this 18th day of August, 2008.

    s/   D<small>ONALD</small> W. B<small>OSTWICK</small>
DONALD W. BOSTWICK
United States Magistrate Judge