# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KATHY A. WELCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | CASE NO. 00-1439-DWB |
| ) | |
| UNUM LIFE INSURANCE ) | |
| COMPANY OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's Unopposed Motion to Vacate the Order of the District Court Granting Plaintiff's Motion for Summary Judgment. (Doc. 88.)[1]

## PROCEDURAL BACKGROUND

Plaintiff brought this action for declaratory judgment in state court claiming that defendant had improperly discontinued her long-term disability benefits, and defendant removed the case to this court on October 24, 2000, on the ground that plaintiff's suit implicates the Employee Retirement Income Security Act (ERISA),

---

[1] The district court proceedings in this case are before a magistrate judge pursuant to a consent of the parties. (Doc. 14.)

29 U.S.C. §§ 1001, *et.seq.*  (Doc. 1.)

Thereafter, the court granted summary judgment for plaintiff (Doc. 27); defendant appealed the case to the Court of Appeals for the Tenth Circuit (Doc. 38); the Tenth Circuit reversed and remanded the case to this court for determination "whether it was arbitrary and capricious for UNUM to apply Amendment 23's self-reported symptoms limitation to Ms. Welch's claim for benefits based on her condition of fibromyalgia," **Welch v. UNUM Life Ins. Co. of America**, 382 F.3d 1078, 1082 (10th Cir. 2004); the court again entered summary judgment for plaintiff (Doc. 67); and defendant again appealed to the Tenth Circuit.  (Doc. 81.)

As a result of a settlement conference with the Tenth Circuit Office of Mediation, the parties reached a settlement agreement during the pendency of the second appeal.  (Doc. 88 at 3.)  The written Release and Settlement Agreement reached between the parties has been filed with this court (Doc. 89),[2] and the settlement is contingent upon this court approving vacatur of its summary judgment order.  (Doc. 88 at 2; Doc. 89 at ¶ 4.)  If this court does not grant the motion to vacate its prior order, defendant has a specified time to elect whether to

---

[2] The agreement mistakenly references another case number (08-CV-2499-JWL/JPO), but it clearly is a settlement of this case. The amount of the settlement has been redacted from the filed agreement, but the court has been made aware of the amount of the settlement.

reinstate its appeal with the Tenth Circuit or proceed with the settlement.  (Doc. 89 at ¶ 4.)[3]

## DISCUSSION

The Tenth Circuit has held that, on remand, a district court may consider a request for vacatur pursuant to Fed. R. Civ. P. 60(b), and that in doing so the district court has substantial discretion to grant relief as justice requires.  ***Amoco Oil Co. v. U.S.  E.P.A.,*** 231 F.3d 694, 697 (10th Cir. 2000) (*citing **U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership***, 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2 233 (1994)).  However, such relief "is extraordinary and may only be granted in exceptional circumstances." ***Amoco***, 231 F. 3d at 697 (*citing **Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.***, 909 F.2d 1437, 1440 (10th Cir. 1990)).

In ***U.S. Bancorp***, the Supreme Court addressed the question of whether courts should vacate an appellate opinion where the case has become moot as a result of a settlement of the parties.  513 U.S. at 23, 115 S.Ct. at 390.[4]  The Court

---

[3] The pending appeal, Tenth Circuit Case No. 08-3259, has been dismissed by Order filed April 6, 2009, but if the district court does not approve the settlement reached by the parties, the appeal can be reinstated upon motion by the appellant, UNUM.  (Doc. 87.)

[4] In ***Oklahoma Radio Assoc. v. F.D.I.C.***, the Tenth Circuit had earlier refused to vacate one of its appellate opinions after the parties had reached a settlement, noting that the court was "seriously troubled by the effort here, made for whatever reason, to cause the withdrawal of an opinion of this court and the nullification of its precedential effect." 3 F.3d

3

noted that although the case involved vacatur of an appellate court opinion, it was also appropriate to discuss the relevance of the Court's holding to motions at the court-of-appeals level for vacatur of district-court judgments. 513 U.S. at 28, 115 S.Ct. at 393. The Court then stated their holding:

> We hold that mootness by reason of settlement does not justify vacatur of a judgment under review. This is not to say that vacatur can never be granted when mootness is produced in that fashion. As we have described, the determination is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur -- which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations we have discussed.

*Id.* The Court's discussion of equitable relief centered on both the issue of the public interest and whether vacatur might somehow facilitate settlements:

> As always when federal courts contemplate equitable relief, our holding must also take account of the public interest. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp.,* 510 U.S. 27, 40, 114 S.Ct. 425, 428, 126 L.Ed.2d 396 (1993) (STEVENS,

---

1436, 1437 (10th Cir. 1993). In that case, the court reviewed prior decisions of the Supreme Court and virtually all of the various circuit courts concerning vacatur.

4

> J., dissenting). . . . To allow a party who steps off the
> statutory path to employ the secondary remedy of vacatur
> as a refined form of collateral attack on the judgment
> would -- quite apart from any considerations of fairness
> to the parties -- disturb the orderly operation of the
> federal judicial system,
>
> * * *
>
> A final policy justification urged by petitioner is the
> facilitation of settlement, with the resulting economics
> for the federal courts.  But while the availability of
> vacatur may facilitate settlement after the judgment under
> review has been rendered and certiorari granted (or
> appeal filed), it may *deter* settlement at an earlier stage.
> *Some* litigants, at least, may think it worthwhile to roll
> the dice rather than settle in the district court, or in the
> court of appeals, if, but only if, an unfavorable outcome
> can be washed away by a settlement-related vacatur.
> And the judicial economies achieved by settlement at the
> district-court level are ordinarily much more extensive
> than those achieved by settlement on appeal.  We find it
> quite impossible to assess the effect of our holding, either
> way, upon the frequency or systemic value of settlement.

*Id.*

Following the decision in ***U.S. Bancorp***, the Tenth Circuit upheld a district court decision which refused to grant vacatur where the parties had mooted the case through settlement, concluding that the moving party had failed to prove the existence of exceptional equitable circumstances. ***Amoco Oil Co. v. U.S. E.P.A.,*** 231 F.3d 694, 700 (10th Cir. 2000).   However, in yet a later case, this court had occasion to order a vacatur of portions of a summary judgment order after the

5

parties had reached a settlement agreement which included a provision for seeking vacatur. **United Nat'l Ins. Co. v. Airosol Company, Inc.,** No. 99-1236-JTM, 2001 WL 34664157 (D. Kan., Feb. 21, 2001). In finding exceptional circumstances and granting the motion for vacatur, the court noted that both parties desired the settlement, that public interest would not suffer detriment by the resulting loss of precedent, that settlement would be in the best interest of both parties, and that the benefits of vacatur outweighed any harm the judicial system might suffer from losing legal precedent. 2001 WL 34664157 at * 1.

In the present case, defendant identifies five reasons to support its request for vacatur of the summary judgment order or opinion:

1. The opinion is an unpublished district court opinion that has limited precedential value;

2. The parties agree that vacatur is appropriate in this case;

3. The decision is largely limited to the facts presented in this case;

4. The settlement came about through the assistance of the Tenth Circuit Office of Mediation which is an important program that should be encouraged; and

5. There is potentially superseding case law from the U.S. Supreme Court in the case of ***Metropolitan Life Ins. Co., v. Glenn***, __U.S. __.

128 S.Ct. 2343, __ L.Ed.2d __ (2008).

(Doc. 88 at 2-3.)  The court must determine whether any of these reasons, or any combination of the stated reasons, shows an exceptional circumstance that justifies vacatur in this case.

While reason two states that the parties support vacatur, this fact alone cannot constitute exceptional circumstances.  Obviously the parties want both the settlement and the vacatur or they would not have entered into the written settlement agreement.  However, as the Supreme Court noted in ***U.S. Bancorp***, "exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur. . . ."   513 U.S. at 28, 115 S.Ct. at 393.

Likewise, while reason four stresses that the settlement resulted from the assistance of the Tenth Circuit Office of Mediation, and while settlements in general and the activities of that Office are strongly encouraged, the Court in ***U.S. Bancorp*** discussed the importance of settlement and concluded that it was "impossible to assess the effect of our holding, either way, upon the frequency or systemic value of settlement."  *Id.*  The clear implication of this conclusion is that the encouragement of settlement itself does not constitute such an exceptional circumstance as would justify vacatur.

Reasons one and three, read together, urge that the opinion in this case is of

7

limited precedential value because it is an unpublished district court opinion and is largely limited to the specific facts in the case.  The Tenth Circuit has refused to vacate its published opinions in an earlier case noting that no action by the court can retroactively change the fact that the decisions were published and might be useful to someone in the future.  *Martinez v. Winner*, 800 F.2d 230, 231 (10th Cir. 1986).  Admittedly, the district court opinion in this case is not published in a bound volume of the Federal Supplement Second; however, it is reported through the Westlaw system.  *Welch v. UNUM Life Ins. Co. of America*, No. 00-1439-DWB, 2007 WL 4374219 (D. Kan., Dec. 13, 2007).  As such, the court sees little relevance of whether the case is included in a bound volume versus being available on-line.

On the other hand, the court agrees that the decision that UNUM acted arbitrarily in this ERISA case was based, as it must be, on specific evidence in the record.  Similar evidence may, or may not, be present in other cases, but that is true of almost any decision; however, mere factual differences do not necessarily mean that the decision might not be useful to someone in the future.  If, as UNUM argues, the opinion in this case is of little precedential value, then UNUM would have no reason to seek vacatur as part of any settlement.  In fact, the situation may be just the opposite.  Because UNUM presumably has many disability policies

outstanding with precisely the same provision concerning self-reported limitations, it may be important to UNUM that others not become aware of how that limitation has been construed in this case. The fact that *Welch* has already been cited and discussed in another case involving the same limitation supports such a conclusion.[5] Therefore, the court concludes that neither reason one nor reason three establish any exceptional circumstances that would justify vacatur in this case.

Finally, reason five urges that the standard of review applied by the court in this case has effectively been superseded by the Supreme Court's decision in *Metropolitan Life Ins. Co., v. Glenn*, __U.S. __. 128 S.Ct. 2343, __ L.Ed.2d __ (2008).[6] The court agrees with UNUM's general statement that a change in the relevant case law by the United States Supreme Court warrants relief under Fed. R.

---

[5] For example, the court notes that *Welch* has been cited and discussed in ***Godden v. Long Term Disability Plan for Employees of Huntington Banc Shares***, 2008 WL 687124 (S.D. Ohio, Mar. 10, 2008) which also involved a disability claim based on fibromyalgia. The Ohio court noted that the same limitation provision was involved in both cases. The Ohio court also concluded that it "is in substantial agreement with the analytical model followed by the District Court in *Welch,*" but distinguished *Welch* factually because of two things: (1) evidence that was in the claim file in *Welch,* but not in the Ohio case, and (2) a recommendation by a consultant for UNUM in *Welch* that was not present in the Ohio case. *Id.* at * 5.

[6] While *Glenn* was decided after the court's ruling on summary judgment in this case, the court was aware of the decision and cited it in a subsequent Memorandum and Order concerning attorneys fees and prejudgment interest. (Doc. 79 at 11 n. 6.)

Civ. P. 60(b). *See* **Adams v. Merrill Lynch Pierce Fenner & Smith,** 888 F.2d 696, 702 (10th Cir. 1989),   However, the court does not agree that the "standard of review" which is set out in **Fought v. UNUM Life Ins. Co. of America,** 379 F.3d 997 (10th Cir. 2004) varies significantly from that outlined in **Glenn** in that both cases reaffirm that the standard of review is the traditional arbitrary and capricious standard. *Cf.* **Fought,** 397 F.3d at 1006 *with* **Glenn**, 128 S.Ct. at 2350.  The court does acknowledge, however, that the Supreme Court in **Glenn** did question whether it was necessary or desirable for courts to create special burden-of-proof rules or other special procedural or evidentiary rules that focus narrowly on the conflict issue.  **Glenn**, 128 S.Ct. at 2351.  As UNUM argues, this would appear to refer to the type of analysis that the Tenth Circuit employed when it defined "inherent conflicts" and instructed that a district court require the plan administrator to demonstrate that its interpretation of the plan is reasonable and supported by "substantial evidence."  **Fought**, 397 F.3d at 1006.   According to **Fought**, the district court, in those cases of inherent conflict, "must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest."  *Id.*

Following the decision in **Glenn**, the Tenth Circuit has had occasion to

consider the effect of that Supreme Court decision.  In *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002 (10th Cir. 2008), the court considered an appeal by the insurer from a summary judgment entered in favor of the beneficiary.  After citing *Fought*, the court noted that *Glenn* applied an arbitrary and capricious standard of review, but dialed back any deference if the plan gives discretion to an administrator who is operating under a conflict of interest, and the Tenth Circuit stated that

> To incorporate this factor, we have "crafted a 'sliding scale approach' where the 'reviewing court will always apply an arbitrary and capricious standard, but [will] decrease the level of deference given . . . in proportion to the seriousness of the conflict.'" *Flinders [v. Workforce Stabilization Plan of Phillips Petroleum Co.,]* 491 [1180] at 1190 (quoting *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825-26 (10th Cir. 1996)).  <u>This approach mirrors the *Glenn* Court's method of accounting for the conflict-of-interest factor.</u>  See *Glenn*, 128 S.Ct. at 2351-52 (explaining that factor should prove more or less important depending on the conflict of interest's magnitude).

541 F.3d at 1010-11 (emphasis added).  The Tenth Circuit then cited *Fought* for the proposition that if plan language is ambiguous, the court must take a hard look and determine whether the decision was arbitrary in light of the insurer's conflict

11

of interest. 541 F.3d at 1011.[7]

District courts in this circuit have also had occasion to consider the impact of the ***Glenn*** decision. Judge Crow, citing ***Weber***, noted that the Tenth Circuit had described its use of the sliding scale for consideration of conflicts as one that mirrors the ***Glenn*** Court's method of accounting for the conflict of interest factor. ***Boggio v. Hartford Life and Accident Ins. Co.***, No. 07-4067-SAC, 2009 WL 801795 at * 11 (D. Kan., Mar. 25, 2009). Chief Judge Daniel from Colorado allowed supplemental briefing in a case to address the decision in ***Glenn. Buzby v. Metropolitan Life Ins. Co.***, No. 04-cv-2631, 2009 WL 103636 at * 1 (D. Colo., Jan. 13, 2009). After reviewing those briefs and authorities, the court concluded:

> I find that these decisions do not require me to reverse the decision of the administrator and order the award of benefits as argued by Plaintiff. I found in my Final Order that the administrator had a conflict of interest in that it is both the claims administrator and the insurer and evaluated that conflict under a less deferential standard. This is consistent with *Glenn*. In so doing, I required the administrator to bear the burden of proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard in

---

[7] In a later unpublished opinion, the Tenth Circuit noted that an insurer acting as a plan administrator has a financial interest that is inherent in its double role, and stated that this conflict must be weighed as a factor in determining whether the denial of benefits was lawful, citing both ***Weber*** and ***Glenn. Brown v. Hartford Life Ins. Co.***, 301 Fed. Appx. 772 (10th Cir. 2008). Because the lower court had improperly applied a *de novo* standard of review, the case was remanded to the district court for further consideration of the conflict and the administrator's acts of alleged inconsistency.

>  accordance with Tenth Circuit law. . . . It appears that
>  this burden of proof would no longer be proper under
>  *Glenn*. Nonetheless, it shows that I took the conflict of
>  interest seriously and that I took a hard look at the
>  evidence and arguments presented by the parties to
>  ensure that the decision was a reasoned application of the
>  terms of the plan, untainted by the conflict of interest. *Id.*
>
>  * * *
>
>  I believe that I complied with the spirit, if not the letter,
>  of *Glenn* in that I took account of the conflict of interest
>  in addition to other factors I found important.

*Id.* at * 3 (record citations omitted).

In this case, the district court cited and followed the analysis and requirements set out by the Tenth Circuit in ***Fought*** concerning the standard of review and application of the conflict factor. *See* Doc. 67 at 5-8. While the Supreme Court may consider the Tenth Circuit's approach to be neither necessary nor desirable, this court is not convinced that ***Glenn*** necessarily requires that any case applying the ***Fought*** formula is automatically subject to reversal. As the Supreme Court noted, when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. ***Glenn***, 128 S.Ct. at 2352. That is how the court analyzed the conflict issue in the present case -- by considering all the evidence, including UNUM's inherent conflict. Like Chief Judge Daniels, the court believes that it

complied with the spirit of *Glenn* in considering the factor of UNUM's conflict.

While the court does not believe that its analysis in this case is automatically subject to reversal in light of the subsequent decision in *Glenn*, there is a possibility that the Tenth Circuit might remand the case again with instructions to this court to again analyze all the facts and circumstances in the case, without application of the formula set out in *Fought*, to determine whether UNUM acted in an arbitrary and capricious manner in denying benefits.  This possibility, combined with the fact that plaintiff has been attempting to collect her disability benefits for almost ten years, does appear to constitute exceptional circumstances that would justify a vacatur in this case.  The benefits awarded to plaintiff as a result of the district court's opinion in this case will terminate when plaintiff reaches the age of 65, which will occur in 2010.  (Doc. 67 at 29 n. 17.)  If the parties' settlement is not approved and UNUM reinstates its Tenth Circuit appeal, and if the Tenth Circuit feels compelled to remand for the district court to reconsider the effect of UNUM's conflict of interest, that process may not play out for several months.[8]

---

[8] For example, a review of the Tenth Circuit docket sheet in Case No. 08-3259 reflects that no briefs were filed in the appeal of this case before it was dismissed by stipulation of the parties.  Therefore, if the settlement were not approved and the appeal was reinstated, it would be some time before the case was fully briefed and argued to the Circuit.  Even if the case were affirmed with no remand, some considerable time would pass before the judgment would be final and collectible by plaintiff.  Any remand for reconsideration of the standard to be applied concerning UNUM's conflict of interest would only further delay the finality of the case.

Considering plaintiff's age and medical condition, and keeping in mind that the Federal Rules of Civil procedure are to be "construed and administered to secure the just, speedy and inexpensive determination of every action . . . ," Fed. R. Civ. P. 1, the court reluctantly concludes that this case does involve exceptional circumstances and that application of equitable principles justify granting the unopposed motion for vacatur in this case.[9] Whether the vacatur gives UNUM what it really desires -- to have the court's opinion disappear entirely -- remains to be seen, depending upon whether, or to what extent the opinion is removed from the Westlaw database.

**IT IS THEREFORE ORDERED** that Defendant's Unopposed Motion to Vacate the Order of the District Court Granting Plaintiff's Motion for Summary

---

[9] As the court previously noted in granting judgment for plaintiff after remand from the Tenth Circuit, it is particularly bothersome to the court in this case that UNUM *retroactively* amended the plan in this case so that plaintiff became bound by Amendment 23.  *See* Doc. 67 at 20 n. 11.  The court believes that this factor also weighs in favor of a finding of exceptional circumstances that would justify vacatur and allow plaintiff to proceed to complete the settlement that has been negotiated.

Judgment (Doc. 88) is GRANTED.

Dated at Wichita, Kansas, on this 22nd day of April, 2009.

     s/   D<small>ONALD</small> W. B<small>OSTWICK</small>
DONALD W. BOSTWICK
United States Magistrate Judge

16